## THE TRANSFER NO. 16.

### (District Court, S. D. New York. April 29, 1912.)

COLLISION (§ 95*)—TUGS WITH TOWS MEETING—FAULT.

A collision in East River between the tows of two tugs meeting at the same time that two other vessels were also meeting *held* due solely to the fault of the tug going up against an ebb tide in failing to stop or back until the other down-bound tug, which was crossing diagonally, should get out of the way.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

In Admiralty. Suit by the Baltimore & Ohio Railroad Company, owner of the tug Narragansett, against the Transfer No. 16; New York, New Haven & Hartford Railroad Company, claimant. Decree for libelant.

Harrington, Bigham & Englar, of New York City, for libelant.
James T. Kilbreth, of New York City, for claimant.

WARD, Circuit Judge. August 23, 1910, the libelant's tug Narragansett, with lighter Connellsville on her starboard and light float No. 60 on her port side, was coming down the East River below Corlear's Hook, a little on the Brooklyn side of midchannel. Just ahead of her, also going down the river, was the tug Water Front with three garbage scows tandem, making a total length of about 500 feet. The steamer Seaboard was coming up the river close to the Brooklyn shore, and Transfer No. 16 with a loaded car float on each side was coming up on the New York side of midchannel. The Water Front blew a signal of two whistles, which was intended to advise the Narragansett that she was going to round to on a port helm and tie up her tow at Clinton on the New York side. All the vessels concerned understood this perfectly. The Water Front's tow swung across No. 16's course, and, the river at this point being not

quite 1,500 feet wide, necessarily took up a large part of it. The Narragansett answered the Water Front with two blasts, starboarded, and then exchanged a signal of one blast with the Seaboard. No. 16 exchanged a signal of one whistle with the Water Front. For the purpose of carrying out these engagements and passing between the tail of the Water Front's tow and the Seaboard, the Narragansett stopped her engines and drifted with the tide, which at this point sets a little diagonally onto the New York shore and passed very close to the Seaboard. No. 16 ported so as to pass between the tail of the Water Front's tow and the Narragansett and slowed. It was as the vessels were approaching in this situation that the lighter Connellsville on the starboard side of the Narragansett came into contact about midships with the after corner of No. 16's starboard float.

The libelant says the collision was caused by No. 16 starboarding when very close to the Narragansett, to correct her porting for the Water Front's tow, and as I think also to go into the New York shore so as to get the benefit of the eddy at Corlear's Hook, and this threw the after corner of the starboard front into the Connellsville. The claimant of No. 16, on the other hand, says the collision was caused by the Narragansett's failure to correct the set of the ebb tide by starboarding. At this time, however, the Narragansett's engines were stopped, and she had no steerageway.

I think the libelant's account is the true one, and that the dangerous proximity of the vessels would have been avoided if Transfer No. 16, which was coming up against the ebb tide, had seasonably stopped, or, if necessary, backed, as she could easily have done, until the Water Front had completed her swing across the river.

There may be the usual interlocutory decree for the libelant.